UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UMAR SHAHID,<br><br>    Plaintiff,<br><br>   v.<br><br>I. ALDAZ et al.,<br><br>    Defendants. | No. 2:14-cv-0454 JAM KJN P<br><br><br>FINDINGS AND RECOMMENDATIONS |

Plaintiff is a state prisoner, proceeding pro se, with a civil rights action seeking relief under 42 U.S.C. § 1983. This matter is before the court on the parties' cross-motions for summary judgment brought pursuant to Rule 56 of the Federal Rules of Civil Procedure.

For the reasons discussed below, the court recommends denying plaintiff's motion for summary judgment and granting defendant's motion for summary judgment.

**BACKGROUND**

Plaintiff is proceeding on a second amended complaint against defendant Rodriguez for his alleged interference with plaintiff's right to marry. Specifically, plaintiff alleges that the defendant refused to process his marriage application, which plaintiff's fiancée Aurielle Walton had sent to the prison. According to plaintiff, his fiancée broke off their engagement as a result of the stress of the situation. In terms of relief, plaintiff seeks monetary damages. (Sec. Am. Compl. at 3.)

# SUMMARY JUDGMENT STANDARDS UNDER RULE 56

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

Under summary judgment practice, the moving party "initially bears the burden of proving the absence of a genuine issue of material fact." In re Oracle Corp. Securities Litigation, 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). The moving party may accomplish this by "citing to particular parts of materials in the record, including depositions, documents, electronically store information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admission, interrogatory answers, or other materials" or by showing that such materials "do not establish the absence or presence of a genuine dispute, or that the adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A), (B).

When the non-moving party bears the burden of proof at trial, "the moving party need only prove that there is an absence of evidence to support the nonmoving party's case." Oracle Corp., 627 F.3d at 387 (citing Celotex, 477 U.S. at 325.). See also Fed. R. Civ. P. 56(c)(1)(B). Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. See Celotex, 477 U.S. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, . . ., is satisfied." Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or

admissible discovery material, in support of its contention that the dispute exists. See Fed. R. Civ. P. 56(c)(1); Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (citations omitted).

"In evaluating the evidence to determine whether there is a genuine issue of fact," the court draws "all reasonable inferences supported by the evidence in favor of the non-moving party." Walls v. Central Costa County Transit Authority, 653 F.3d 963, 966 (9th Cir. 2011). It is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).

**OTHER APPLICABLE LEGAL STANDARDS**

I. Civil Rights Act Pursuant to 42 U.S.C. § 1983

The Civil Rights Act under which this action was filed provides as follows:

> Every person who, under color of [state law] . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the

3

> Constitution . . . shall be liable to the party injured in an action at
> law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. The statute requires that there be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by plaintiff. See Monell v. Department of Social Servs., 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362 (1976). "A person 'subjects' another to the deprivation of a constitutional right, within the meaning of § 1983, if he does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

Moreover, supervisory personnel are generally not liable under § 1983 for the actions of their employees under a theory of respondeat superior and, therefore, when a named defendant holds a supervisorial position, the causal link between him and the claimed constitutional violation must be specifically alleged. See Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978). Vague and conclusory allegations concerning the involvement of official personnel in civil rights violations are not sufficient. See Ivey v. Board of Regents, 673 F.2d 266, 268 (9th Cir. 1982).

II. The Fourteenth Amendment

The United States Supreme Court has held that prisoners have a constitutional right to marry. See Turner v. Safely, 482 U.S. 89, 95-96 (1987) (citing Zablocki v. Redhail, 434 U.S. 374 (1978), and Loving v. Virginia, 388 U.S. 1, 12 (1967)). "When a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." Turner, 482 U.S. at 89. A court must consider four factors to determine whether a prison regulation is reasonable: (1) whether "there [is] a 'valid, rational connection' between the prison regulation and the legitimate governmental interest put forward to justify it"; (2) "whether there are alternative means of exercising the right that remain open to prison inmates"; (3) "the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally"; and (4) "the absence of ready alternatives is evidence of the reasonableness of a prison regulation." Id. at 89-90.

4

III. Qualified Immunity

Government officials enjoy qualified immunity from civil damages unless their conduct violates clearly established statutory or constitutional rights. Jeffers v. Gomez, 267 F.3d 895, 910 (9th Cir. 2001) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). When a court is presented with a qualified immunity defense, the central questions for the court are: (1) whether the facts alleged, taken in the light most favorable to the plaintiff, demonstrate that the defendant's conduct violated a statutory or constitutional right; and (2) whether the right at issue was "clearly established." Saucier v. Katz, 533 U.S. 194, 201 (2001). The Supreme Court has held that "while the sequence set forth there is often appropriate, it should no longer be regarded as mandatory." Pearson v. Callahan, 555 U.S. 223, 236 (2009). In this regard, if a court decides that plaintiff's allegations do not make out a statutory or constitutional violation, "there is no necessity for further inquiries concerning qualified immunity." Saucier, 533 U.S. at 201. Likewise, if a court determines that the right at issue was not clearly established at the time of the defendant's alleged misconduct, the court may end further inquiries concerning qualified immunity at that point without determining whether the allegations in fact make out a statutory or constitutional violation. Pearson, 555 U.S. at 236-242.

"A government official's conduct violate[s] clearly established law when, at the time of the challenged conduct, '[t]he contours of [a] right [are] sufficiently clear' that every 'reasonable official would have understood that what he is doing violates that right.'" Ashcroft v. al-Kidd, 131 S. Ct. 2074, 2083 (2011) (quoting Anderson v. Creighton, 483 U.S. 635 (1987)). In this regard, "existing precedent must have placed the statutory or constitutional question beyond debate." Id.; see also Clement v. Gomez, 298 F.3d 898, 906 (9th Cir. 2002) ("The proper inquiry focuses on . . . whether the state of the law [at the relevant time] gave 'fair warning' to the officials that their conduct was unconstitutional.") (quoting Saucier, 533 U.S. at 202). The inquiry must be undertaken in light of the specific context of the particular case. Saucier, 533 U.S. at 201. Because qualified immunity is an affirmative defense, the burden of proof initially lies with the official asserting the defense. See Harlow, 457 U.S. at 812.

/////

5

**PLAINTIFF'S STATEMENT OF UNDISPUTED FACTS AND EVIDENCE**

In support of his motion for summary judgment, plaintiff submitted a declaration signed under penalty of perjury. Attached to plaintiff's declaration is a copy of his CDCR 22 Request for Interview form inquiring about the status of his marriage application, a copy of his CDCR 602 inmate appeal also asking about the status of his marriage application, prison officials' responses to plaintiff's CDCR 602 inmate appeal, a memorandum from Marriage Coordinator A. Wallace, and various correspondence between plaintiff and the County of Lassen (Office of the County Clerk Recorder) and the Lassen County Superior Court. The evidence submitted by plaintiff in support of his motion for summary judgment appears to establish the following.

1. On or about October 17, 2013, plaintiff and his fiancée submitted a marriage application to High Desert State Prison in accordance with prison procedure. They did not hear or receive a response from prison officials, so on or about on October 30, 2013, plaintiff submitted a CDCR 22 Request for Interview form. According to plaintiff, prison officials did not respond to it. Plaintiff declares that defendant Rodriguez was Acting Marriage Coordinator. (Pl.'s Decl. at ¶ 1, Ex. A)

2. On November 20, 2013, plaintiff filed a CDCR 602 inmate appeal complaining about staff not processing his marriage application. Pursuant to High Desert State Prison procedure, an inmate seeking to get married must ask the marriage coordinator to process his marriage license with Lassen County. (Pl.'s Decl. at ¶ 2, Exs. A-C)

3. On January 8, 2014, defendant Rodriguez called plaintiff to the program office to conduct a hearing regarding his inmate appeal concerning the delay in processing his marriage application. According to plaintiff, defendant Rodriguez stated that he was acting marriage coordinator and granted plaintiff's inmate appeal. Defendant Rodriguez also stated a marriage date would be set. (Pl.'s Decl. at ¶ 3, Ex. D)

4. Plaintiff received a memo from Marriage Coordinator Wallace, dated December 18, 2013, that stated his marriage application had been approved and his wedding date had been scheduled for January 18, 2014. However, according to plaintiff, defendant Rodriguez stated that plaintiff could not get married because his fiancée was found guilty of a

visiting room violation. Plaintiff declares that he received a write-up for the same alleged visiting room violation, but a correctional hearing officer dismissed it in the interest of justice because he determined that the officer had fabricated the write-up. (Pl.'s Decl. at ¶ 4, Pl.'s Mem. of P. & A. Ex. B)

5. Pursuant to High Desert State Prison marriage procedures, prison officials are supposed to send a marriage application to the Lassen County Clerk on an inmate's behalf. Defendant Rodriguez stated that plaintiff's marriage date had been set and granted plaintiff's appeal, but plaintiff declares that the defendant did not follow through with the relief he stated he would give plaintiff, thus obstructing plaintiff's right to marry. (Pl.'s Decl. at ¶ 5, Ex. C)

6. On May 30, 2014, plaintiff's fiancée informed him that due to all of the stress this situation was causing, she no longer wanted to continue the engagement. (Pl.'s Decl. at ¶ 9)

**DEFENDANT'S STATEMENT OF UNDISPUTED FACTS AND EVIDENCE**

In support of defendant Rodriguez's motion for summary judgment, defense counsel has submitted a statement of undisputed facts supported by citations to declarations signed under penalty of perjury by defendant Rodriguez and non-party Marriage Coordinator A. Wallace. Attached to defendant Rodriguez's declaration is a copy of plaintiff's visitation history with his fiancée, a copy of the visiting room rules, a copy of the visiting room disciplinary log, a copy of the Notice of Visitor Termination given to plaintiff's fiancée for excessive physical contact, and a copy of the Notice of Visitor Suspension also given to plaintiff's fiancée. Attached to Marriage Coordinator Wallace's declaration is a copy of relevant sections of the High Desert State Prison Supplement Operations Manual, a copy of the High Desert State Prison Marriage Application, and a copy of the memorandum from Wallace to plaintiff, informing him that his marriage application had been approved and his wedding date was scheduled for January 18, 2014. The evidence submitted by defense counsel in support of defendant's motion for summary judgment appears to establish the following.

1. All eligible High Desert State Prison ("HDSP") inmates may apply for an inmate marriage. (Wallace Decl. at ¶ 2, Ex. A (High Desert State Prison Supplemental

| | |
|---|---|
| 1 | Operations Manual ("HDSP SDOM"), § 101070.8 (Sept. 2013 rev.)) |
| 2 | 2. In order to schedule a wedding ceremony, the inmate and his fiancée must first complete a |
| 3 | marriage application. (Wallace Decl. at ¶ 3, Ex. A (HDSP SDOM, § 101070.8)) |
| 4 | 3. Assuming the application is properly completed, the Marriage Coordinator will set a date |
| 5 | for the ceremony, and will notify the inmate of the scheduled wedding date. (Wallace |
| 6 | Decl. at ¶ 3, Ex. A (HDSP SDOM, § 101070.8)) |
| 7 | 4. Assuming the application is properly completed, the Marriage Coordinator will submit the |
| 8 | marriage application to the Lassen County Clerk's Office for processing. (Wallace Decl. |
| 9 | at ¶ 3, Ex. A (HDSP SDOM, § 101070.8)) |
| 10 | 5. There is no specific timeframe for the Marriage Coordinator to submit an application to |
| 11 | the County Clerk's Office, but because inmate marriages are scheduled once per month, |
| 12 | the Marriage Coordinator regularly performs this task on a monthly basis as needed. |
| 13 | (Wallace Decl. at ¶ 3) |
| 14 | 6. Inmate marriage ceremonies take place in the HDSP visiting room. (Wallace Decl. at ¶ 4) |
| 15 | 7. All HDSP rules and regulations regarding inmate visits are strictly enforced during |
| 16 | wedding ceremonies, and anyone not permitted to enter the HDSP visiting room cannot |
| 17 | attend the wedding ceremony. (Wallace Decl. at ¶ 4, Ex. A (HDSP SDOM, § 101070.6)) |
| 18 | 8. If the visiting privileges of an inmate's fiancée have been suspended, the wedding will be |
| 19 | postponed until the fiancée's visiting privileges are restored. (Wallace Decl. at ¶ 5.) |
| 20 | 9. The County Clerk will not perform ceremonies behind glass. (Wallace Decl. at ¶ 5; Ex. A |
| 21 | (HDSP SDOM, § 101070.8)) |
| 22 | 10. On December 6, 2013, A. Wallace, then-Acting Marriage Coordinator, received a |
| 23 | marriage application for plaintiff and Aurielle Walton. (Wallace Decl. at ¶ 7, Ex. B) |
| 24 | 11. Acting Marriage Coordinator Wallace sent a confirmation to plaintiff of receipt of the |
| 25 | application on December 18, 2013, and notified him that his marriage application had |
| 26 | been approved and that his wedding date was scheduled for January 18, 2014. (Wallace |
| 27 | Decl. at ¶ 7, Ex. B) |
| 28 | 12. On January 1, 2014, Aurielle Walton visited plaintiff in the visiting room at HDSP. |

(Rodriguez Decl. at ¶ 2, Ex. A)

13. Prison officials terminated this visit because plaintiff and Aurielle Walton engaged in excessive contact, which is a violation of the HDSP visiting room rules. The visiting room officer on duty issued Ms. Walton a Notice of Visitor Termination, which defendant Rodriguez approved on the following day. (Rodriguez Decl. at ¶¶ 4, 6, 7, 8, Exs. B, C, D)

14. On the same day, the visiting room officer issued Ms. Walton a Notice of Visitor Suspension, suspending Ms. Walton's visiting privileges for six months. Defendant Rodriguez approved it on the following day. (Rodriguez Decl. at ¶ 9, Ex. E)

15. Prison officials had verbally disciplined plaintiff and Ms. Walton for engaging in excessive contact in violation of the visiting room rules on two prior occasions. (Rodriguez Decl. at ¶¶ 6, 8 Exs. C, D)

16. Plaintiff and Ms. Walton's wedding date was set for January 18, 2014, when their visitation privileges were suspended, so the Marriage Coordinator did not send plaintiff's marriage application to the County Recorder's Office. Plaintiff's wedding could not have taken place in the HDSP visiting area between January 1, 2014, and the June 30, 2014 date. (Wallace Decl. at ¶ 9)

17. While Marriage Coordinator Wallace was temporarily out of the office, defendant Rodriguez responded to a grievance submitted by plaintiff. Defendant Rodriguez was not the Acting Marriage Coordinator, nor did he ever inform plaintiff that he was the Acting Marriage Coordinator. Rather, he responded to plaintiff's inquiry about the status of his marriage application in his capacity as a Visiting Sergeant. (Rodriguez Decl. at ¶ 10)

18. Defendant Rodriguez interviewed plaintiff and informed him that his marriage application was complete and that a wedding date had been set for January 18, 2014. (Rodriguez Decl. at ¶ 11)

/////
////
////
////

**ANALYSIS**

In resolving cross-motions for summary judgment, the court must consider each party's evidence. See Johnson v. Poway Unified School District, 658 F.3d 954, 960 (9th Cir. 2011). Because in this case plaintiff will bear the burden of proof at trial on his claims, in order to prevail on summary judgment he must affirmatively demonstrate that based upon the undisputed facts no reasonable trier of fact could find other than for him. See Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007). Because defendant Rodriguez does not bear the burden of proof at trial, in moving for summary judgment, he need only prove an absence of evidence to support plaintiff's case. See Oracle Corp., 627 F.3d at 387.

Based on all of the evidence presented in connection with the pending cross-motions for summary judgment, and for the reasons stated below, the undersigned concludes that plaintiff's motion for summary judgment should be denied, and defendant's motion for summary judgment should be granted.

I. Plaintiff's Motion for Summary Judgment

As to plaintiff's motion for summary judgment, the court finds that plaintiff has failed to establish beyond dispute that defendant Rodriguez interfered with his right to marry in violation of the Fourteenth Amendment. As an initial matter, the evidence plaintiff has presented on summary judgment fails to establish that defendant Rodriguez actually interfered with his right to marry. It is well established that there can be no liability under 42 U.S.C. § 1983 unless there is some affirmative link or connection between a defendant's actions and the claimed deprivation. Rizzo, 423 U.S. 362; May v. Enomoto, 633 F.2d 164, 167 (9th Cir. 1980). In this case, plaintiff declares that at the time he spoke with defendant Rodriguez regarding his inmate appeal about his marriage application, defendant Rodriguez told him he was the acting marriage coordinator and that a marriage date would be set. (Pl.'s Decl. at ¶¶ 3 & 5.) Plaintiff then speculates that defendant Rodriguez did not "follow through" with what he said after that meeting. (Id. ¶ 5.) However, plaintiff has submitted no evidence to show defendant Rodriguez took any affirmative action or failed to perform an act he was legally required to do that resulted in plaintiff's marriage delay. Johnson, 588 F.2d at 743.

Moreover, in considering plaintiff's motion for summary judgment, the court is required to believe defendant Rodriguez's evidence and draw all reasonable inferences from the facts before the court in defendant's favor. Drawing all reasonable inferences from the evidence presented in defendant's favor, the court finds that defendant Rodriguez submitted evidence sufficient to create a genuine issue of material fact with respect to plaintiff's claim that defendant Rodriguez interfered with his right to marry.

Specifically, defendant Rodriguez submitted evidence that demonstrates that non-party Marriage Coordinator Wallace sent plaintiff confirmation of receipt of his marriage application on December 18, 2013, and she notified him that his marriage application had been approved and his wedding date scheduled for January 18, 2014. (Wallace Decl. at ¶ 8.) Not long thereafter, however, Marriage Coordinator Wallace (and not defendant Rodriguez) decided not to send plaintiff's marriage application to the County Recorder's Office because plaintiff's marriage date was set during the timeframe in which prison officials had suspended plaintiff and his fiancée's visiting privileges. (Id. ¶ 9.) It is undisputed that inmate marriage ceremonies take place in the HDSP visiting room, and if prison officials have suspended the visiting privileges of an inmate's fiancée, they will postpone the wedding until after they have restored the fiancée's visiting privileges. (Id. ¶ 5.) The County Clerk will not perform marriage ceremonies behind glass. (Id.) Based on this evidence, the court finds that a jury could conclude that plaintiff and his fiancée and/or Marriage Coordinator Wallace (and not defendant Rodriguez) was responsible for any delay plaintiff experienced in his marriage date.

Finally, plaintiff has not submitted any evidence to show that prison officials delayed his marriage for reasons not reasonably related to legitimate penological interests. In a case similar to this one, the United States District Court for the Northern District of California rejected a prisoner's claim that prison officials had interfered with his right to marry when they delayed his wedding date until after they reinstated his fiancée's visitation privileges. Castellanos v. Gomez, No. C-93-0503 MHP, 1994 WL 519465 (N.D. Cal. Sept. 21, 1994). In Castellanos, prison officials granted Lara Campanaro visiting privileges at Pelican Bay State Prison in August 1990, but suspended them in 1992, because they suspected her of participating in gang-related activities.

1  Id. at *1. Subsequently, Castellanos identified Campanaro as his fiancée and sought information
2  about marriage regulations at the prison. Id. at *2. Although Castellanos had submitted the
3  necessary documents and met all of the legal requirements to marry, prison officials would not
4  process his marriage request because they had Campanaro on a restricted visitation status. Id.
5  Ultimately, prison officials failed to substantiate any evidence that linked Campanaro to a gang
6  and reinstated her visitation privileges. Id. The couple wed at the prison in 1993. Id.

The Northern District of California rejected Castellanos's right-to-marry claim and held:

> Prison officials' delay in allowing Castellanos and Campanaro to marry clearly satisfied the Turner test. As explained above, officials reasonably believed that Campanaro could be a security threat and thus restricted her visitation privileges. This same security rationale provides an adequate justification for their delaying the marriage as well. Moreover, the prison officials' actions were not an "exaggerated response" to the perceived security threat and reasonably accommodated Castellhanos' right to marry. . . . Castellanos and Campanaro were married less than one year after he first requested general information on marriage procedures for SHU inmates. Within six months, officials had put the appropriate procedures in place and had determined that Campanaro's visitation privileges could be reinstated; the balance of the delay was attributable to Campanaro's delay in submitting the appropriate materials and to reasonable processing time by the County Clerk.
>
> Especially considering the great degree of deference that courts must show to prison officials, it is clear that defendants' regulation of Castellanos' marriage to Campanaro was eminently reasonable and did not rise to the level of a constitutional violation.

Castellanos, No. C-93-0503 MHP, 1994 WL 519465 at *6. See also Ford v. Fischer, No. 9:09-CV-723 (DNH/ATB), 2-12 WL 4754560 (N.D.N.Y. Aug. 7, 2012) (denial of prisoner's right to marry based on his long-term SHU placement was reasonably related to legitimate penological interests), modified on other grounds by 2012 WL 4748848 (N.D.N.Y. Oct. 4, 2012).

Similar to the court in Castellanos, the undersigned finds in this case that plaintiff has not shown that the marriage delay he experienced rose to the level of a constitutional violation. Although plaintiff has a constitutional right to marry, his right to marry like many other rights is subject to substantial restrictions as a result of his incarceration. Turner, 482 U.S. at 95. The undisputed evidence before the court demonstrates that prison officials had twice verbally disciplined plaintiff and his fiancée for violating visiting room rules during prior visits, but they

12

continued to engage in excessive contact on January 1, 2014, resulting in prison officials terminating their visit and suspending their visitation privileges.[1]  (Rodriguez Decl. at ¶¶ 6-8 & Exs. C-E.)  Under these circumstances, this court cannot say that prison officials engaged in an "exaggerated response" when they suspended their visitation privileges and delayed plaintiff's marriage date.  Turner, 482 U.S. at 99 (prison officials may regulate the time and circumstances of a marriage ceremony).  Nor has plaintiff given this court any reason to doubt that there are legitimate security concerns that justify the visiting room rules, which allow inmates to briefly embrace and kiss their visitor at the beginning and end of their visit but prohibit other physical contact aside from holding hands above the visiting table.  (Rodriguez Decl., Ex. B.)

Accordingly, for all of the foregoing reasons, the court recommends denying plaintiff's motion for summary judgment.

II. Defendant's Motion for Summary Judgment

The court turns now to defendant Rodriguez's motion for summary judgment on plaintiff's Fourteenth Amendment claim.  The court finds that defendant Rodriguez has met the initial burden of demonstrating that there is no genuine issue of material fact with respect to the plaintiff's Fourteenth Amendment claim.  Specifically, defendant Rodriguez's evidence demonstrates that he did not take any action to interfere with plaintiff's right to marry.

As discussed above, according to defendant's evidence, non-party Marriage Coordinator Wallace sent plaintiff confirmation of receipt of his marriage application on December 18, 2013, and she notified him that his marriage application had been approved and his wedding date scheduled for January 18, 2014.  (Wallace Decl. at ¶ 8 & Ex. C.)  Not long thereafter, however, Marriage Coordinator Wallace (and not defendant Rodriguez) decided not to send plaintiff's

---

[1] Although plaintiff declares that prison officials issued him a write-up for the same visiting room violation but a correctional hearing officer dismissed the charge in the interest of justice because he determined that the visiting room officer had fabricated it, plaintiff has provided no evidence in support of this contention beyond his own conclusory declaration.  Cf. F.T.C. v. Publ'g Clearing House, Inc., 104 F.3d 1168, 1171 (9th Cir. 1997) (conclusory affidavit, lacking detailed facts and supporting evidence, does not create a genuine issue of material fact)); Soremekun, 509 F.3d at 984 ("Conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment.").  Nor has plaintiff has provided any evidence to show that prison officials dismissed his fiancée's visiting room violation.

marriage application to the County Recorder's Office because plaintiff's marriage date was set during the timeframe in which prison officials had suspended plaintiff and his fiancée's visiting privileges. (Id. ¶¶ 3 & 9.) It is undisputed that inmate marriage ceremonies take place in the HDSP visiting room, and if prison officials have suspended the visiting privileges of an inmate's fiancée, they will postpone the wedding until after they have restored the fiancée's visiting privileges. (Id. ¶ 5.) The County Clerk will not perform marriage ceremonies behind glass. (Id.)

Given the evidence submitted by defendant Rodriguez in support of his pending motion for summary judgment, the burden shifts to plaintiff to establish the existence of a genuine issue of material fact with respect to his right-to-marry claim. Of course, in considering defendant's motion for summary judgment with respect to plaintiff's claim, the court is required to believe plaintiff's evidence and draw all reasonable inferences from the facts before the court in his favor. Drawing all reasonable inferences from that evidence in plaintiff's favor, the court finds that plaintiff has failed to submit sufficient evidence to create a genuine issue of material fact with respect to his claim that defendant Rodriguez interfered with his right to marry.

Specifically, plaintiff has not submitted any evidence to demonstrate that defendant Rodriguez engaged in any conduct that resulted in his inability to get married. As discussed above in connection with plaintiff's motion for summary judgment, at most plaintiff speculates that defendant Rodriguez did not "follow through" with the relief he stated he would give plaintiff after they met regarding plaintiff's inmate appeal. He offers no evidence, however, to show that defendant Rodriguez took any affirmative action or failed to perform an act he was legally required to do that resulted in plaintiff's marriage delay. Johnson, 588 F.2d at 743. Nor has plaintiff offered any evidence to dispute Marriage Coordinator Wallace's declaration that her task at the time was to submit marriage applications to the Lassen County Clerk's Office for processing and that she decided not to send plaintiff's marriage application to the County Recorder's Office because his marriage date was set during the timeframe in which prison officials had suspended his fiancée's visiting privileges. (Wallace Decl. at ¶ 9.) Based on this evidence, the court finds that a reasonable jury could not conclude that defendant Rodriguez interfered with plaintiff's right to marry.

Accordingly, for all of the foregoing reasons, the court recommends granting defendant's motion for summary judgment.

III. Qualified Immunity

Lastly, the court turns to defendant Rodriguez's argument that he is entitled to qualified immunity from liability. For the reasons discussed above, the court finds that the facts in this case, taken in the light most favorable to plaintiff, demonstrate that defendant Rodriguez did not violate plaintiff's right to marry. In addition, insofar as defendant Rodriguez was involved in any delay of plaintiff's marriage date, the court also finds that defendant Rodriguez could have reasonably believed that the suspension of plaintiff and Ms. Walton's visiting privileges provided adequate justification to delay their marriage date because there was no clearly established law to the contrary. See al-Kidd, 131 S. Ct. at 2083.

The Ninth Circuit Court of Appeals has not addressed the affirmative defense of qualified immunity in this context, but the Seventh Circuit Court of Appeals determined in a similar case that prison officials were entitled to qualified immunity for delaying a prisoner's marriage date until after prison officials reinstated his fiancée's visiting privileges. See Martin v. Snyder, 329 F.3d 919 (7th Cir. 2003). In Martin, a state prisoner and his fiancée filed a civil rights action, claiming that prison officials interfered with their right to marry. Martin, 329 F.3d at 920. During a prison visit, the two had embraced and kissed, and Martin fondled her buttocks. Id. Prison officials issued Martin a prison disciplinary ticket for this conduct and prohibited him from having visitors for thirty days. Id. Prison officials also placed his fiancée's name on a restricted list of indefinite duration. Id. Subsequently, Martin and his fiancée submitted a request to get married. Id. Prison officials denied the request because Martin's fiancée was not allowed to visit him at the time. Id. Ultimately, after eighteen months, prison officials reinstated their visiting privileges. Their marriage had been delayed for twelve months. Id. The Seventh Circuit held that defendants were entitled to qualified immunity from liability and explained:

> Though the complaint protests a denial of marriage, we know now that the warden did not preclude it. He only postponed it. Turner does not say that every delay violates the Constitution, and several decisions have held that prisoners may be required to wait for counseling or administrative processing. Restrictions on visitation,

15

> though not enough to justify prohibiting marriage, may well justify deferment, so that the sanction for misconduct will have some sting. No case of which we are aware concludes that a year's delay is unconstitutional when the prisoner's misbehavior has led to curtailment of visiting rights. Nor does the lack of authority imply that delay is so clearly forbidden that no one would bother to defend or litigate about the practice. There have been other protests about delay in marriage, and wardens have won all of the appellate decisions we could locate. . . . Qualified immunity thus is appropriate in this case. . . . .

Martin, 329 F.3d at 921-22. See also Castellanos v. Gomez, No. C-93-0503 MHP, 1994 WL 519465 at *n.3 (N.D. Cal. Sept. 21, 1994) (even if a delay in a prisoner's marriage constituted a constitutional violation the defendants would be entitled to qualified immunity because "it would not be unreasonable to believe that temporary denial due to restricted visitation status of the proposed bride was constitutional").

Similar to the court in Martin, the undersigned finds in this case that, insofar as defendant Rodriguez was involved with the delay in plaintiff's marriage date, he is entitled to qualified immunity from liability. Defendant Rodriguez could have reasonably believed that delaying plaintiff's marriage date because prison officials had suspended plaintiff and his fiancée's visitation privileges was consistent with the Fourteenth Amendment.

Accordingly, for all of the foregoing reasons, the court recommends granting defendant Rodriguez's motion for summary judgment based on the affirmative defense of qualified immunity.

**CONCLUSION**

Accordingly, IT IS HEREBY RECOMMENDED that:

1. Plaintiff's motion for summary judgment (Doc. No. 44) be denied;

2. Defendant's motion for summary judgment (Doc. No. 41) be granted; and

3. This action be closed.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned

"Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections shall be filed and served within seven days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

Dated: April 28, 2016

_____
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

shah0454.57xmsj